IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:12-cr-196 |
| | ) | JUDGE SHARP |
| ABDULLAHI FARAH. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

**I. INTRODUCTION**

Comes now Mr. Farah through his attorney, and requests this Court dismiss the indictment filed on October 3, 2012. The indictment charges Mr. Farah with three counts, all from his refusal to testify at a deposition on September 12, 2012. (Copy of Indictment, Doc. 1, attached hereto as **Exhibit A**). The first two counts allege criminal contempt. The third count alleges obstruction of a sex trafficking enforcement action, a violation of 18 U.S.C. § 1591(d).

This motion to dismiss is based on four grounds. First, the entire indictment violates the constitutional prohibition against double jeopardy. Second, as a matter of law, counts one and three of the indictment are defective. The Government cannot prove the requisite elements of those counts because it cannot show that Mr. Farah possessed the specific intent to obstruct justice. Third, the Government cannot prove an ongoing enforcement action as required by count three. Fourth, the third count is constitutionally void for vagueness.

**II. FACTUAL AND PROCEDURAL HISTORY**

The complex procedural history of this case was summarized by Judge Campbell in an Order dated September 20, 2012 in Case 3:12-cr-00085, Docket No. 80 (Excerpt attached hereto as **Exhibit B**). Briefly, the indictment at issue in this case is an attempt by the Government to

{00835602.1 }

heap additional punishment on Mr. Farah for his continuing refusal to testify as a Government witness. Mr. Farah is alleged to be a material witness in the case of United States v. Adan, et al., Case No. 3:10-cr-00260. The Adan case involves allegations of sex trafficking by Somali gang members. Mr. Farah agreed to assist the prosecution when he was initially approached by the Government. He helped to identify gang members and testified before the Grand Jury. As the criminal trial approached, Mr. Farah was physically attacked twice by gang members and his family was threatened.

Fearing further retaliation, on April 18, 2012 and, again on April 19, 2012, Mr. Farah told Judge Campbell that he would not testify in the Adan trial. (Case 3:12-cr-00085, docs. 27-1 and 27-2). Judge Campbell ordered Mr. Farah to be held in civil contempt and incarcerated. Mr. Farah persisted in his refusal. On June 7, 2012, at the request of the Government, Judge Campbell held a bench trial to determine whether Mr. Farah should be held in criminal contempt for his persistent refusal to testify in the Adan case. Judge Campbell convicted Mr. Farah of criminal contempt finding that "the transcripts of the hearings before the Court on April 18, 2012 and April 19, 2012 indicate that the Court clearly ordered the Defendant to testify in the Adan case." (Case 3:12-cr-00085, doc. 34).

While Mr. Farah was serving his four month sentence for criminal contempt, the Court granted the Government's request to depose Mr. Farah, pursuant to 18 U.S.C. § 3144, the recalcitrant witness statute. The United States convened a deposition on September 12, 2012. Mr. Farah was not sworn or otherwise put under oath. (Case 3:12-cr-00085, Doc. 77, excerpt attached hereto as **Exhibit C**). He was asked whether he would provide testimony in what the United States referred to as Trials 2, 3, and 4. Each of these trials involves different sets of

defendants and counts from Adan case.  None of the trials have been set.   Mr. Farah restated the position that he had asserted on April 18 and April 19, 2012, that he would not testify at any trial in the Adan case.   (Id.).  In reaction, the Government filed a motion to hold Mr. Farah in civil contempt, (Case 3:12-00085, Doc. 73) which was denied by Judge Campbell on September 20. (Doc. 80).  Less than two weeks later, the Government filed the indictment at issue in this case.

### III. LEGAL ARGUMENT

#### A. Double Jeopardy

Mr. Farah has already been tried and found guilty of contempt pursuant to 18 U.S.C. § 401(3) for refusing on April 18 and 19 to testify in the Adan case.  His continuing refusal to testify at the deposition convened on September 12, 2012 was a continuation of this same contempt.  The Sixth Circuit has held that "[a] pretrial deposition hearing is manifestly ancillary to the court for purposes of the Recalcitrant Witness Act, and [a witness's] refusal was a present refusal to testify at the proceeding itself."  United States v. Johnson, 752 F.2d 206, 210 (6th Cir. 1985).  Judge Campbell has already found, as a matter of law, that "Mr. Farah's refusal to testify at the deposition is tantamount to refusing to testify at each of the upcoming trials."  (Exhibit 2, p 5).

Given that Mr. Farah's conduct on September 12th was "tantamount" to his conduct on April 18, 2012 and April 19, 2012, it is apparent that the Government is attempting to prosecute Mr. Farah for conduct for which he has already been tried and convicted.  This violates the double jeopardy clause of the Fifth Amendment of the United States Constitution.  The relevant portion of the amendment provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."   The Fifth Amendment has been interpreted as

protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction. Brown v. Ohio, 432 U.S. 161, 165 (1977). The double Jeopardy Clause applies to nonsummary criminal contempt prosecutions just as it does in other criminal prosecutions. United States v. Dixon, 509 U.S. 688, 696 (1993).

The traditional test for double jeopardy claims is the "same elements" test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932). In that case, the Supreme Court instructed lower court to determine whether each charged offense "requires proof of an additional fact which the other does not". Unlike the situation faced by Mr. Farah, Blockburger analyzed whether the Government violated double jeopardy protections when closely connected conduct resulted in multiple charges under multiple statutes. Mr. Farah faces a situation in which he faces multiple prosecutions for the same conduct.

The Court of Appeals for the Sixth Circuit has recognized that the Blockburger test "is insufficient where (as in Mr. Farah's case) . . . the concern is not multiple charges under separate statutes, but rather successive prosecutions for conduct that may constitute the same act or transaction." Indeed, the Court has noted that "multiple charges that satisfy the Blockburger standard, and thus may properly be joined in a single prosecution, may nevertheless violate double jeopardy if prosecuted successively." Rashad v. Burt, 108 F.3d 677, 679-80 (6th Cir. 1997).

The Rashad case is instructive. In that case, Detroit police executed a search warrant for Mr. Rashad's residence. The police found drugs in Mr. Rashad's basement and drug residue in his car, parked in the driveway. The police impounded the car and, a week later, found a large quantity of cocaine in a hidden compartment. Mr. Rashad was initially tried on charges related

only to the cocaine found in his residence despite the fact that the police knew of the discovery of drugs in the car in time to amend the charges. Then, six months after his conviction for the drugs found in his home, Mr. Rashad was tried on charges related to the drugs found in his car. Mr. Rashad appealed the second conviction on double jeopardy grounds. Id at 679.

The Sixth Circuit held that the second prosecution violated the Fifth Amendment protection against double jeopardy. Id. at 680. In explaining its analysis, the Court explained that if "the same evidence will serve for both convictions -- irrespective of whether the convictions are under statutes that satisfy *Blockburger* 's 'same elements' test -- the second prosecution is barred by double jeopardy. Id. The Court went on to characterize the prosecution's decision to separate Rashad's charges into two trials as "strategic maneuvering" forbidden by the double jeopardy clause and stressed that "[i]t is well settled that double jeopardy protections may not be avoided by the simple expedient of exercising prosecutorial discretion to 'divid[e] a single crime into a series of temporal or spatial units.'" Id.

In a subsequent case, United States v. Forman, 180 F.3d 766 (6th Cir. 1999), the Sixth Circuit limited to application of the rule set forth in Rashad. "[T]he issue in *Rashad* was whether the possession of cocaine in defendant's home and car constituted one or two units of conduct." Id at 769. The court in Foreman explained that "where the concern is whether the prosecution has impermissibly divided the defendant's conduct so that it may bring repeated prosecutions under the same statute, it is clear from the *Rashad* opinion that the referenced language is to be limited in its application to circumstances such as were present in that case." Id. at 770.

The indictment at issue in Mr. Farah's case constitutes the impermissible division of criminal conduct prohibited by Rashad and Foreman. The Government is attempting to conduct successive prosecutions for a single unit of conduct – the refusal to testify in the Adan case.

**1. Count one – contempt amounting to obstructive behavior.**

In count one, the Government has alleged that Mr. Farah's refusal to testify at his deposition violated 18 U.S.C. § 401(1). This allegation is simply an attempt to impose additional punishment on Mr. Farah for the same conduct for which Mr. Farah was tried and convicted on June 7, 2012. Rather than alleging that Mr. Farah has disobeyed a court order pursuant to section 401(3), as was alleged on June 7, 2012 the Government has chosen to characterize his refusal as "misbehavior" pursuant to section 401(1). No matter what label is applied, the fact remains that the Fifth Amendment protects Mr. Farah from being tried again for the same conduct.

Subsection (1) of 18 U.S.C. § 401 permits the court to punish "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." The elements are that: (a) the conduct must constitute misbehavior under 18 U.S.C. § 401(1); (b) the misbehavior must amount to an obstruction of the administration of justice; (c) the conduct must occur in the court's presence; and (d) there must be a form of intent to obstruct. See In re Chandler, 906 F.2d 248, 249 (6th Cir. 1990) and United States v. Arredondo, 349 F.3d 310, 317 (6th Cir. 2003).

Because this case involves successive prosecutions for "a single unit of conduct," it is appropriate under Blockburger, Rashad, and Foreman to compare the charges under subsection (1) with those under subsection (3) to determine "whether each provision requires proof of a fact

which the other does not" and also whether the Government has impermissibly divided a single unit of criminal conduct.

On June 7, 2012, at the conclusion of Mr. Farah's criminal trial, Judge Campbell found that Mr. Farah violated 18 U.S.C. 401(3). Judge Campbell made the following findings of fact: (1) a clear and definite order; (2) the defendant knew of the order; and (3) the defendant willfully disobeyed the order. (Case 3:12-cr-00085, doc. 34). The new indictment alleging a violation of 18 U.S.C. 401(1) is prohibited because the same facts that would have to be proven at a new trial for a conviction under 18 U.S.C. 401(1) were determined at the previous trial on June 7, 2012. Said another way, the prosecution can only convict Mr. Farah of violating 18 U.S.C. 401(1), as set forth in count one of the indictment, if it proves that Mr. Farah willfully disobeyed a clear and definite order of the Court by refusing to testify in the Adan case. Those facts have already been proven beyond a reasonable doubt at a prior trial. Count One, therefore, is barred by double jeopardy.

**2. Count two – contempt by disobeying a court order.**

Count two alleges that Mr. Farah disobeyed a lawful court order when he refused to testify at the September 12, 2012 deposition. By including this count, the Government seeks to transform Mr. Farah's single act of contempt (his refusal to testify in the Adan case on April 18, 2012 and 19, 2012) into multiple acts of contempt for the purpose of imposing additional punishment. Such Government overreaching has been explicitly prohibited for over half a century. In Yates v. United States, 355 U.S. 66 (1957), Ms. Yates refused to answer eleven questions relating to whether persons other than herself were members of the Communist Party. The District Court imposed 11 consecutive criminal contempt sentences. In reversing 10 of the

11 convictions, the Supreme Court of the United States stressed that "the prosecution cannot multiply contempts by repeated questioning on the same subject of inquiry within which a recalcitrant witness already has refused answers." Yates v. United States, 355 U.S. at 73. The United States is attempting to multiply contempts by repeated questioning on the same subject of inquiry within which Mr. Farah has already refused answers.

The reasoning in Yates is confirmed by an application of Blockberger and its progeny to count two. The prior conviction for criminal contempt pursuant to section 401(3) and the newly alleged violation of section 401(3) require identical proof. The only difference is that the conduct alleged in the indictment refers to the September 12, 2012 deposition. As in Yates, this is a distinction without a difference. The refusal to testify at the deposition is tantamount to the refusal to testify at trial.

### 3. Count three – obstruction of sex trafficking enforcement

The third count of the indictment charges Mr. Farah under 18 U.S.C. § 1591(d) with attempting to obstruct or interfere with the enforcement of 18 U.S.C. § 1591(a), sex trafficking. There are no published cases setting forth the elements the Government must prove to establish a violation of 18 U.S.C. § 1591(d). According to the indictment, the Government intends to prove (1) that Mr. Farah "knowingly" engaged in certain conduct – wrongfully refusing to testify at the deposition and; (2) that such conduct constitutes attempted or actual interference with; (3) ongoing enforcement of 18 U.S.C. § 1591(a).

Count three of the indictment, like counts one and two, constitutes double jeopardy when prosecuted after Mr. Farah's contempt conviction. The Government must necessarily prove the elements of a violation of 18 U.S.C. 401(3) to prove a violation of 18 U.S.C. § 1591 as charged.

The only conduct that could possibly constitute obstruction was Mr. Farah's willful disregard of a clear and definite order of the Court when he refused to testify in the Adan case. However, because his previous conviction did not require proof of any facts not required for a conviction under 18 U.S.C. § 1591, the current indictment constitutes double jeopardy.

### B. Defective Indictment

The indictment is defective as to counts one and three because neither count alleges the appropriate intent standard. Count three is also defective because there is no ongoing enforcement action and because the statute cited in count three is unconstitutionally vague.

Rule 12 of the Federal Rules of Criminal Procedure and its component parts encourages district courts to entertain and dispose of pretrial criminal motions before trial if the motions are capable of determination without trial of the general issues. United States v. Levin, 973 F.2d 463, 467 (6th Cir. 1992). Federal Rule of Criminal Procedure 12(b)(1) states that: "Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." A defense is thus "capable of determination" if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. Rule 12(b)(4) allows the District Court in its discretion to postpone determination of the motion to trial, and permits factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion. Id. at 469.

**1. Counts one and three fail as a matter of law because they don't allege the correct *mens rea* for obstruction.**

The Court should dismiss counts one and three because, as a matter of law, the Government cannot obtain a conviction based on the indictment. The first count requires an

intent to "obstruct the administration of justice" and the third count requires an intent to obstruct the enforcement of the sex trafficking statute, 18 U.S.C. § 1591. The government has not alleged, nor can it prove, an intent to obstruct on the part of Mr. Farah.

In count one, the Government alleges that Mr. Farah "knowingly" misbehaved so as to obstruct justice. In count three, the Government alleges that Mr. Farah "knowingly" engaged in certain conduct – wrongfully refusing to testify at the deposition. "Knowing" conduct, however, is not the correct intent standard for either count.

Section 1503 of Title 18 provides guidance as to both section 401(1) and 1591(d). Section 1503 is commonly known as the "Omnibus Provision" because it applies to a broad range of obstructive conduct. See United States v. Aguilar, 515 U.S. 593, 598-99 (1995) ("[T]he 'Omnibus Clause' serves as a catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice.").

Section 1503 of Title 18 has a *mens rea* requirement that limits its scope to those who "corruptly" or intentionally seek to obstruct justice. This requires that one impede the due administration of justice with "the general intent of knowledge *as well as the specific intent of purpose to obstruct*." United States v. Bashaw, 982 F.2d 168, 170 (6th Cir. 1992) (emphasis in the original). Section 1505, "Obstruction of Proceedings before Departments, Agencies, and Committees" also defines the *mens rea* requirement as acting "corruptly."

An indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Gatewood, 173 F.3d 983, 987 (6th Cir. 1999) quoting Hamling v. United States, 418 U.S. 87, 117 (1974). Neither count one nor count three of the indictment meet this requirement.

The allegations are ambiguous and misstate the required intent element. Counts one and three, therefore should be dismissed.

**2. Count Three Fails as a Matter of Law Because There is No Ongoing Enforcement Action.**

There is another fatal flaw in count three. "[A] person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court. Aguilar at 593. In other words, the prohibited act must have the "natural and probable effect" of interfering with the due administration of justice. Id.

Section 1591 prohibits obstruction with the enforcement of the sex trafficking statute, and criminal statutes must be strictly construed. United States v. Essex, 407 F.2d 214 (6th Cir. 1969). Given this requirement for strict construction, the Sixth Circuit has limited violations of the omnibus obstruction statute to those that impact a "pending federal proceeding." Id. For example, when addressing the alleged intimidation of a witness, the Court said that the mere existence of that federal proceeding is not sufficient to establish or support any inference that the federal proceeding was the focus of the alleged threat." Id.

As of September 12, 2012, the date alleged on count three of the indictment, there were no trials scheduled in the Adan case. In denying the motion for civil contempt, Judge Campbell explained that he had "serious concerns about detaining a witness for civil contempt pending trials that have not yet been scheduled." (Exhibit 2, p, 5, fn 1). Although Judge Campbell's concern was directed at the problem of involuntary detention, it also applies to the problem of charging Mr. Farah with obstruction.

There was no pending proceeding toward which Mr. Farah could have directed any corrupt intent. As a matter of law, there is simply no nexus between Mr. Farah's refusal to testify and the Government's speculative future enforcement of section 1591 in the Adan case. Mr. Farah could not possess the requisite "corrupt" intent to interfere with something that, at the time, did not exist.

**3. Section 1591(d) of Title 18 is Void for Vagueness.**

Finally, count three must be dismissed because 18 U.S.C. 1591(d) is void for vagueness. The section is unconstitutionally vague, both on its face and as applied to Mr. Farah, in violation of the Fifth Amendment. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" is void for vagueness. Connally v. Gen. Const. Co., 269 U.S. 385, 391 (1926). As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Kolender v. Lawson, 461 U.S. 352, 357 (1983).

Section 1591, unlike the omnibus obstruction statute, does not contain any stated *mens rea* requirement. This lack of a *mens rea* requirement prevents ordinary people from understanding what conduct is prohibited and encourages arbitrary enforcement. The cases discussing the constitutionality of section 1503 note the inclusion of the need for "corrupt" conduct in saving that statute from constitutional challenge. See United States v. Jeter, 775 F.2d 670, 679 (6th Cir. 1985) ("The obstruction of justice statute possesses a limited standard of culpability that confines its coverage to constitutionally unprotected activity, which stems from

its explicit *mens rea* requirement that a person must "corruptly" endeavor to interfere with the due administration of justice.").

Since §1591 does not contain this language, the public in general, and Mr. Farah in particular, cannot possibly know what actions could expose them to criminal liability for an action that the Government later alleges to have "in any way interfere with and prevent the enforcement of Title 18, United States Code 1591(a)." (Doc. 1).

## IV. REQUEST FOR RELIEF

For the reasons stated above the Defendant requests the Court dismiss the indictment filed against Mr. Farah on October 3, 2012. In the event that the Court rejects the Defendant's claims of double jeopardy, he seeks immediate appellate review pursuant to Abney v. U. S., 431 U.S. 651, 662 (1977) and 28 U.S.C. § 1291.

Respectfully submitted,

/s/ James E. Mackler
James E. Mackler (BPR #024855)
BONE MCALLESTER NORTON
511 Union Street, Suite 1600
Nashville, TN 37219
(615) 238-6312 (phone)
(615) 248-4668 (facsimile)
jmackler@bonelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the forgoing was sent via the Court's electronic filing system or, if not registered, deposited in the United States mail to the following on this 9th day of November, 2012.

Van S. Vincent (BPR#013447)
Assistant United States Attorney
110 9th Ave. So.
Suite A-961
Nashville, TN 37203
van.vincent@usdoj.gov

           /s/ James E. Mackler

{00835602.1 }